# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANTOINETTE ARIBAL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 12 C 9735 |
| v. | ) |
| | ) |
| GMAC MORTGAGE, LLC, PARTNERS | ) |
| FOR PAYMENT RELIEF DE III, LLC, | ) |
| and POTESTIVO & ASSOCIATES, PC, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On January 29, 2013, Plaintiff Antoinette Aribal brought the present nine-count Amended Class Action Complaint against Defendants GMAC Mortgage LLC ("GMAC Mortgage"), Partners for Payment Relief DE III, LLC ("Partners"), and Potestivo & Associates, PC ("Potestivo") for allegedly violating the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.,* ("FDCPA") and state law. Before the Court are Partners' and Potestivo's motions to dismiss pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). For the following reasons, the Court denies Partners' and Potestivo's motions.

## BACKGROUND

Plaintiff alleges that Defendants attempted to collect a consumer debt consisting of an allegedly delinquent second mortgage loan. (R. 46, Am. Compl. ¶ 19.) The note and mortgage were executed in 2005 regarding a single-family residence. (*Id.*) Prior to July 2012, Plaintiff contends that GMAC Mortgage serviced the mortgage and that her monthly payments were approximately $696.21. (*Id.* ¶ 20.) Plaintiff further asserts that she made monthly payments to

GMAC Mortgage, often in amounts slightly larger than required, but that GMAC Mortgage did not properly credit many of the payments to her account. (*Id.* ¶ 21.) Instead, Plaintiff alleges that GMAC Mortgage treated the payments as additional payments and applied the entire amount of the payments to the principal. (*Id.*) Plaintiff also alleges that GMAC Mortgage did not show a regular payment for the months in which she paid additional payments and treated her as in default. (*Id.*) According to Plaintiff, GMAC Mortgage repeatedly sent her notices claiming that her mortgage was in default and sent her statements showing that she was making payments, but that the loan was not current. (*Id.* ¶¶ 23, 25.) Further, Plaintiff asserts that on information and belief, GMAC Mortgage improperly reported her loan as delinquent to credit reporting agencies. (*Id.* ¶ 27.)

In July 2012, GMAC Mortgage transferred Plaintiff's mortgage to Partners representing that the loan was delinquent. (*Id.* ¶¶ 28, 29.) Thereafter, Plaintiff sought to continue to make $700 in monthly payments to Partners, but Partners refused to accept Plaintiff's payments. (*Id.* ¶¶ 34, 35.) In a document sent to Plaintiff on July 6, 2012, Partners asserted that Plaintiff's second mortgage loan was in default. (*Id.* ¶¶ 36, 37.) In addition, Plaintiff maintains that on September 12, 2012, Partners sent her a document stating that she was in default and was behind on her mortgage by $29,971.82. (*Id.* ¶¶ 40, 43.) On or about November 15, 2012, Potestivo, acting on behalf of Partners, sent Plaintiff letters stating that her loan was in default and threatening her with foreclosure. (*Id.* ¶¶ 45, 48, 50.)

Plaintiff brings the following claims in her Amended Class Action Complaint: (1) a class action FDCPA claim against Potestivo (Count I); (2) a class action FDCPA claim against Potestivo and Partners (Count II); (3) a class action breach of contract claim against GMAC

Mortgage (Count III); (4) an individual defamation claim against GMAC Mortgage (Count IV); (5) a class action claim pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, against GMAC Mortgage (Count V); (6) a private claim pursuant to the Illinois Collection Agency Act ("ICAA"), 225 ILCS 425/1, *et seq.*, against Partners (Count VI); (7) an individual breach of contract claim against Partners (Count VII); (8) a class action ICFA claim against Partners (Count VIII); and (9) an individual FDCPA claim against Potestivo and Partners (Count IX). In its motion to dismiss, Potestivo moves to dismiss the FDCPA claims as alleged in Counts I, II, and IX of the Amended Complaint. Partners moves to dismiss Counts II, VI, VIII, and IX.

## LEGAL STANDARDS

### I.     Federal Rule of Civil Procedure 12(b)(6)

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In evaluating the

3

sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011). In ruling on a Rule 12(b)(6) motion, district courts may also consider documents attached to the pleadings without converting the motion into a motion summary judgment, as long as the documents are referred to in the complaint and central to the claims. *See Geinosky v. City of Chicago,* 675 F.3d 743, 745 n.1 (7th Cir. 2012); *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 556 (7th Cir. 2012); Fed.R.Civ.P. 10(c).

## II.     Federal Rule of Civil Procedure 9(b)

In pleading fraud in federal court, Rule 9(b) imposes a higher pleading standard than that required under Rule 8(a)(2). *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011). Specifically, Rule 9(b) requires a pleading to state with particularity the circumstances constituting the alleged fraud. *See* Fed. R. Civ. P. 9(b); *Pirelli*, 631 F.3d at 441-42; *see also Iqbal,* 556 U.S. at 686. This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank*, 649 F.3d at 615 (citation omitted); *see also Cincinnati Life Ins. Co. v. Beyrer*, ___ F.3d. ___, 2013 WL 3379344, at *6 (7th Cir. July 8, 2013). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Iqbal,* 556 U.S. at 686. "[T]he particularity requirement of Rule 9(b) is designed to discourage a 'sue first, ask questions later' philosophy." *Pirelli,* 631 F.3d at 441 (citation omitted). "Heightened pleading in the fraud context is required in part because of the potential stigmatic injury that

4

comes with alleging fraud and the concomitant desire to ensure that such fraught allegations are not lightly leveled." *Id.* at 442.

## ANALYSIS

**I. FDCPA Claims**

**A. Compliance Under 15 U.S.C. § 1692g**

Defendants first argue that the Court should dismiss all of Plaintiff's FDCPA claims because Plaintiff failed to take advantage of the statutory procedure found in 15 U.S.C. § 1692g after Potestivo sent the required written validation notices — also known as dunning letters. Pursuant to Section 1692g, a debt collector's dunning letter must contain the following:

> (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*Zemeckis v. Global Credit & Collection Corp.,* 679 F.3d 632, 635 (7th Cir. 2012) (quoting 15 U.S.C. § 1692g(a)). "Section 1692g also dictates that '[a]ny collection activities and communication during the 30–day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." *Id.* (quoting 15 U.S.C. § 1692g(b)).

Here, Defendants essentially argue that Plaintiff was required to dispute the validity of the debt and wait for Defendants' response before filing the present FDCPA lawsuit and that

5

because she filed her lawsuit two days after sending Defendants a dispute letter, Plaintiff is prohibited from bringing her FDCPA claims in the instant action. In support of their argument, Defendants rely upon the Seventh Circuit's decision in *Bailey v. Security Nat'l Servicing Corp.,* 154 F.3d 384, 388 (7th Cir. 1998), arguing that in *Bailey*, the Seventh Circuit "frowned upon and critiqued the very tactic now being utilized by the Plaintiff in the instant case." (R. 48, Mot. Dismiss Brief, at 10.) More specifically, in *Bailey*, the Seventh Circuit surmised that although "some flagrant abuses by debt collectors are held in check by the collective effort of those who are abused," the "law can be abused just as easily by attorneys who use debtors to allege and test the most minute violations of a concededly intricate statutory scheme." *Id.* The *Bailey* decision, however, did not hold that a FDCPA plaintiff must notify a debt collector to dispute the debt under Section 1692g(a)(4) and then allow the debt collector to respond before filing a FDCPA lawsuit. Indeed, the other cases upon which Defendants rely do not support this contention, *see, e.g., Bleich v. Revenue Maximation Group,* 233 F.Supp.2d 496 (E.D.N.Y. 2002), although the Court recognizes that when plaintiffs dispute their debt under Section 1692g's provisions, lawsuits can be avoided. *See id.* at 500. As such, Plaintiff's decision to file this lawsuit two days after she sent a dispute letter to Defendants is not a basis for the dismissal of her FDCPA claims. The Court now turns to Defendants' arguments as to Plaintiff's specific FDCPA claims.

    **B.**   **Class Action FDCPA Claim Against Potestivo — Count I**

In Count I of her Amended Class Action Complaint, Plaintiff alleges that Potestivo violated the FDCPA, namely, 15 U.S.C. § 1692g(a)(2), by failing to clearly and conspicuously disclose the name of the creditor to whom the debt was owed in its November 15, 2012 letters to Plaintiff. (R. 46-20, 46-21, Pl.'s Exs. T, U.) For this same reason, Plaintiff argues that

6

Potestivo's letters were confusing and misleading in violation of 15 U.S.C. §§ 1692e and 1692e(2).

Potestivo's initial demand letter states that the "debt is owed to Partners for Payment Relief DE III, LLC which is authorized to receive payment on your loan but which may not be the recorded holder of the security deed." (R. 46-21, Ex. U, Consumer Notices, ¶ 2.) Plaintiff argues that this demand letter is ambiguous as to who owns the loan because the use of the word "authorized" suggests agency, not outright ownership, and that the notice states that Partners "may not be the recorded holder of the security dead."

In general, a debt collector violates Section 1692g if it fails to provide information required by the FDCPA or presents the required information in a confusing manner. *See McMillan v. Collection Prof'l Inc.,* 455 F.3d 754, 758 (7th Cir. 2006); *Sims v. GC Servs., L.P.,* 445 F.3d 959, 963 (7th Cir. 2006). When determining whether the debt collection letter violates the FDCPA, courts use the unsophisticated consumer or debtor standard. *See Lox v. CDA, Ltd.,* 689 F.3d 818, 222 (7th Cir. 2012); *Sims,* 445 F.3d at 963. "The unsophisticated debtor is regarded as 'uninformed, naive, or trusting,' but nonetheless is considered to have a 'rudimentary knowledge about the financial world and is capable of making basic logical deduction[s] and inferences.'" *Sims,* 445 F.3d at 963 (citation omitted); *see also Zemeckis,* 679 F.3d at 635. It is well-established in the Seventh Circuit that "[h]ow a particular notice affects its audience is a question of fact, which may be explored by testimony and devices such as consumer surveys." *McMillan,* 455 F.3d at 758 (citation omitted); *see also Lox,* 689 F.3d at 822 ("Contrary to some other circuits, we treat the question of whether an unsophisticated consumer would find certain debt collection language misleading as a question of fact.") (internal citation

omitted). The Seventh Circuit, however, further explains that "as a matter of law, we shall not entertain a plaintiff's bizarre, peculiar, or idiosyncratic interpretation of a collection letter." *McMillan,* 455 F.3d at 758.

At this procedural posture, Plaintiff's interpretation of the dunning letter as it concerns the name of the creditor is not so bizarre, peculiar, or idiosyncratic as to dismiss Plaintiff's Section 1692g claim as a matter of law. *See id.* Indeed, an unsophisticated consumer might find the statement the "debt is owed to Partners for Payment Relief DE III, LLC which is authorized to receive payment on your loan but which may not be the recorded holder of the security deed" confusing because — although it identifies Partners as a creditor — the language suggests that another entity, namely, the recorded holder of the security deed, may also be a potential creditor. *See, e.g., Braatz v. Leading Edge Recovery Solutions,* No. 11 C 3835, 2011 WL 9528479, at *1 (N.D. Ill. Oct. 20, 2011). Accordingly, the Court denies Potestivo's motion to dismiss Count I of the Amended Class Action Complaint.

    **C.**    **Class Action FDCPA Claim Against Potestivo and Partners — Count II**

In Count II of the Amended Class Action Complaint, Plaintiff alleges that by sending the November 15, 2012 letters, Potestivo represented that Partners could bring a foreclosure action against her, but because Partners is not licensed as a collection agency under the Illinois Collection Agency Act ("ICAA"), 225 ILCS 425/3, Potestivo's and Partners' actions violated the FDCPA. Defendants, on the other hand, argue that Partners is a loan and finance company as defined under the ICAA, and not a collection agency, therefore, any licensing requirement is unavailing. As discussed below, however, because Plaintiff sufficiently alleges that Partners is a collection agency under the ICAA, Defendants' present argument based on the licensing

requirement is without merit. The Court therefore denies Defendants' motion to dismiss Count II.

        **D.**       **Individual FDCPA Claim Against Potestivo and Partners — Count IX**

Next, in Count IX of her Amended Class Action Complaint, Plaintiff alleges that Potestivo violated Section 1692e by misrepresenting the amount due and the status of her loan by asserting that she was behind on her loan, was in default, and was subject to foreclosure. *See Todd v. Franklin Collection Serv., Inc.,* 694 F.3d 849, 850 (7th Cir. 2012) (Section 1692e "requires a debt collector to refrain from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'").

In their motion to dismiss, Defendants maintain that Plaintiff has not sufficiently alleged Count IX because she did not allege she was confused by the amount stated in her dunning letter or that she relied on the representations in the letter. In particular, Defendants argue that because Plaintiff was aware of her account history — as evidenced by her allegations in the Amended Class Action Complaint — she "does not appear confused" and "seems fully aware." Not only is Defendants' argument speculative, but it goes beyond the scope of a Rule 12(b)(6) motion to dismiss where the Court must view the allegations and reasonable inferences in Plaintiff's favor. *See AnchorBank,* 649 F.3d at 614. Defendants' argument based on their perception of the facts is best left for summary judgment. *See McMillan,* 455 F.3d at 759 (confusion is a fact-based question). The Court therefore denies Defendants' motion to dismiss Count IX of the Amended Class Action Complaint.

**II.     Illinois Collection Agency Act Claim Against Partners — Count VI**

In Count VI of the Amended Class Action Complaint, Plaintiff alleges that by seeking collection, Partners acted as a collection agency under the Illinois Collection Agency Act ("ICAA"). Plaintiff thus maintains that Partners was required to hold a license pursuant to the ICAA, specifically, 225 ILCS 425/4, and that because Partners did not hold any such license, it violated the ICAA. (Am. Compl. ¶¶ 13, 14.) On the other hand, Partners argues that the Court must dismiss Plaintiff's ICAA claim because it is not a collection agency as defined under the ICAA in the first instance.

The ICAA, specifically, 225 ILCS 425/2.03, defines who qualifies as a collection agency under the Act and states in relevant part:

> This Act does not apply to persons whose collection activities are confined to and are directly related to the operation of a business other than that of a collection agency, and specifically does not include the following:
>
> ....
>
>     8. Loan and finance companies[.]

Despite Partner's argument to the contrary, "taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor," *see AnchorBank,* 649 F.3d at 614, Plaintiff alleges that Partners "regularly collects allegedly defaulted consumer debts originally owed to others" and "has stated on its web site that it is 'a private company that specializes in the Acquisition, Management and Liquidation of defaulted residential mortgages nationwide.'" (Am. Compl. ¶¶ 8, 9.) Thus, according to Plaintiff's allegations, Partners is not a "loan and finance company," but is a collection agency as defined by the ICAA, 225 ILCS 425/3.

Nevertheless, Partners attempts to dispute the facts alleged in the Amended Class Action Complaint by attaching an affidavit averring that Partners is a loan and finance company and not a collection agency. (R. 51-1, Sweeney Aff. ¶ 5.) Partners' argument at this procedural posture is unavailing because as the Seventh Circuit explained over 25 years ago, "the defendant cannot, in presenting its 12(b)(6) challenge, attempt to refute the complaint or to present a different set of allegations. The attack is on the sufficiency of the complaint, and the defendant cannot set or alter the terms of the dispute, but must demonstrate that the plaintiff's claim, as set forth by the complaint, is without legal consequence." *Gomez v. Illinois State Bd. of Educ.,* 811 F.2d 1030, 1039 (7th Cir. 1987). This requirement holds true after the Supreme Court's decisions in *Iqbal* and *Twombly*. *See Iqbal,* 556 U.S. at 678 ("for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true"); *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ("when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."). Therefore, the Court denies Partners' motion to dismiss Count VI of the Amended Class Action Complaint.

### III. Illinois Consumer Fraud Act Claim Against Partners — Count VIII

Last, in Count VIII of the Amended Class Action Complaint, Plaintiff alleges a violation of the Illinois Consumer Fraud Act ("ICFA") against Partners. Specifically, Plaintiff alleges that Partners "demand[ed] and collect[ed] money to which it had no legal right;" "sen[t] collection letters to [P]laintiff directly which asserted a right to collect;" "permitt[ed] Potestivo & Associates P.C., its agent, to send letters on its behalf which (a) threatened litigation that it had no right to pursue, and (b) [did] not clearly identifying the actual owner of the debt;" and "engaged in the business of an unlicensed collection agency." (Am. Compl. ¶¶ 131-34.) By

11

sending these letters and permitting Potestivo to send these letters while Partners was operating without the appropriate license, Plaintiff alleges that Partners committed fraud. (*Id.* ¶¶ 132-33.)

The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 266 Ill.Dec. 879, 775 N.E.2d 951, 960 (2002)). "The elements of a claim under the ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012). Complaints arising from fraudulent activity under the ICFA — such as this case — are subject to the same particularity and specificity rules as claims for common law fraud. *See Pirelli,* 631 F.3d at 446; *McGuire v. Ameritech Cellular Corp.,* 314 Ill. App. 3d 83, 87, 246 Ill.Dec. 815, 731 N.E.2d 343, 346 (1st Dist. 2000).

Plaintiff's allegations in Count VIII rely upon the November 2012 dunning letters from Partners and Potestivo when acting on behalf of Partners. The Court notes that Plaintiff's allegations regarding the improper designation of her mortgage as in default lie more appropriately with her claims against GMAC Mortgage — allegations that are not at issue in the present motions to dismiss. Meanwhile, Plaintiff's ICFA allegations against Partners focus on the alleged licensing failures, namely, that Partners was an unlicensed collection agency. (Am. Compl. ¶ 51.)

In its motion to dismiss, Partners argues that Plaintiff has failed to allege her ICFA claim based on fraud with the required specificity pursuant to Rule 9(b). The Court disagrees. More specifically, Plaintiff's allegations and the exhibits attached to, and incorporated in, her Amended Class Action Complaint provide the requisite specificity under Rule 9(b) by stating the "who, what, where, when, and how" of the fraud. *See Wigod*, 673 F.3d at 556; Fed.R.Civ.P. 10(c). In her Amended Complaint, for example, Plaintiff alleges that Partners committed its fraudulent conduct while "in the course of trade and commerce." (Am. Compl. ¶ 131.) Plaintiff also alleges, "[b]ecause Partners was not licensed as a collection agency in Illinois, it had no right to take any legal action against plaintiff." (*Id.* ¶ 51.) Plaintiff provides additional particularity regarding Partners' licensing failures and conduct surrounding Plaintiff's mortgage payments, including that Partners would not accept her mortgage payments even though she was not in default. (*Id.* ¶¶ 14, 35-44.) In addition, Plaintiff asserts that Partners threatened a foreclosure action and refused to accept monthly payments and that such conduct was "intentionally malicious, oppressive and dishonest." (*Id.* ¶ 66.) Plaintiff also explains that Partners' wrongful conduct included its attempts to collect the alleged debt without clearly disclosing the actual identity of the creditor. (*Id.* ¶ 67.) Further, Plaintiff attaches documents to her Amended Complaint, including the notices and communications that Partners and Potestivo sent her, which provide additional specificity to her ICFA fraud allegations. (*See* R. 46-17-19, 20-21, Exs. Q-U.) As discussed above, these attachments include the written validation notices required by the FDCPA and provide additional detail as to the time, place, and manner of Potestivo's and Partners' conduct.

Plaintiff has also sufficiently alleged actual damages by asserting that Partners "inflicted substantial injury on consumers, by taking their money and homes, and threatening them with loss of money and homes."[1] (*Id.* ¶ 135.) Plaintiff's other actual damages allegations include that Partners' conduct caused harm to her credit rating and caused her aggravation and mental distress. (*Id.* ¶ 68.)

Because Plaintiff has properly alleged her ICFA claim against Partners under the federal notice pleading standards and Rule 9(b), the Court denies Partners' motion to dismiss Count VIII of the Amended Complaint.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motions to dismiss.

**Dated:** July 29, 2013

                                        **ENTERED**

                                        _____
                                        **AMY J. ST. EVE**
                                        **United States District Judge**

---

[1] Plaintiffs need not plead damages allegations with Rule 9(b) particularity. *See LINC Fin. Corp. v. Onwuteaka,* 129 F.3d 917, 922 (7th Cir. 1997).